1

2

3

4

5

6

7

8

9

10

11

12

13

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PETER ALBERS,

          Plaintiff,

    v.

YARBROUGH WORLD SOLUTIONS,
LLC, et al.,

          Defendants.

Case No. 5:19-cv-05896-EJD

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. No. 12

14       Plaintiff Peter Albers brings suit against Defendants Yarbrough World Solutions, LLC

15 ("YWS") and Dally E. Yarbrough alleging violations of the Racketeer Influenced and Corrupt

16 Organizations Act ("RICO") and of California labor laws.  Defendants contend that this Court

17 must dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

18 Having considered the Parties' papers, the Court **GRANTS in part and DENIES in part**

19 Defendants' motion to dismiss.[1]

20    **I.**    **BACKGROUND**

21       **A. Factual Background**

22       Plaintiff is a construction worker in California—he is not personally licensed by the

23 California Contractors State License Board to perform construction services in the state of

24 California.  Complaint ¶ 21 ("Compl."), Dkt. 1.  Defendants operate a "staffing solutions"

25

26

27

28

---

[1] Pursuant to N.D. Cal. Civ. L.R. 7-1(b), this Court found this motion suitable for consideration without oral argument. *See* Dkt. 23.

United States District Court
Northern District of California

1    company, which helps contractors find construction workers for large-scale commercial and

2    government projects in California and across the United States. *Id.* ¶¶ 13, 14. Defendants provide

3    contractors with a site representative and handle the compensation, benefits, and taxes for the

4    construction workers "without the [contractor] having the additional overhead." *Id.* ¶ 14; *see also*

5    *id.* ¶ 15. Plaintiff worked for Defendants from approximately 2006 until August 6, 2019. *Id.* ¶ 21.

6         Plaintiff alleges that Defendant YWS controlled and directed his construction work. *Id.*

7    ¶ 16. Defendant YWS "negotiates all compensation" with its contractor clients on behalf of its

8    construction workers. *Id.* Defendant YWS requires construction workers to report their hours to

9    YWS through YWS's contractor clients, and Defendant YWS maintains the right to terminate its

10   construction workers if a contractor client determines that a construction worker has failed to

11   perform as promised. *Id.* Defendant YWS makes profit by retaining a portion of the

12   compensation generated by construction workers. *Id.* ¶ 17. The construction workers are not

13   customarily engaged in an independently established trade, occupation, or business and are not

14   required to have any professional licenses or specified experience in the construction industry. *Id.*

15   ¶ 18. Defendant YWS represented to its contractor-clients that construction workers are YWS

16   employees whose tax withholding and conferment of benefits are handled by YWS. *Id.* ¶ 19.

17        In fact, Defendant YWS allegedly forced its construction workers to sign "independent

18   contractor/exclusion" waivers for the right to benefits, workers compensation, and employee

19   status. *Id.* ¶ 19. Moreover, Defendant YWS did not provide its employees with any benefits or

20   insurance, did not pay YWS's employer's share of state or federal taxes, and did not withhold any

21   state or federal taxes from YWS employees. *Id.* ¶ 20. Defendants withheld these facts from their

22   contractor clients. *Id.*

23        As a condition of his employment, Defendants required Plaintiff to sign an "Independent

24   Contractor/Exclusion Letter" ("Exclusion Letter") prepared by YWS. *Id.* ¶ 22. This letter stated:

25   (1) Plaintiff "operates as an independent contractor/consultant;" (2) Plaintiff "wishes to be

26   excluded from workers' compensation and client liability;" (3) Defendant YWS "and its clients

27

28   Case No.: 5:19-cv-05896-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

1    are not liable for any benefits or damages to [Plaintiff] should an injury occur;" and (4) by signing

2    the letter, Plaintiff "elected to be excluded from any workers' compensation policy." *Id.* As a

3    condition of employment, Plaintiff was required by Defendant YWS to execute a "List and Refer

4    Agreement" ("Employment Agreement"), which designated Plaintiff as a subcontractor who

5    performed services through his own "independently established business and independently of

6    YWS/Y.E.S." *Id.* ¶ 22.  This Employment Agreement set forth (1) the terms of Plaintiff's

7    compensation, (2) Plaintiff's performance of services, (3) Plaintiff's non-entitlement to supplies or

8    reimbursement of expenses, (4) Plaintiff's acknowledgment of his performance of services as an

9    independent contractor, (5) Plaintiff's agreement to indemnify YWS against "any form of

10   financial detriment, including attorney's fees, whether alleged or actually incurred" in connection

11   with Plaintiff's performance of services, (6) the operative term of the agreement, and (7)

12   Plaintiff's agreement to keep confidential information about YWS's contractor clients, as well as

13   the nature of Plaintiffs' employment. *Id.* ¶ 24.

14        Specifically, Plaintiff alleges that, throughout his employment with Defendant YWS, he:

15   - Consistently worked forty hours per week on construction projects throughout the State

16     of California and the United States under YWS's direction and control;

17   - Was compensated by YWS to provide construction related services;

18   - Was terminable at YWS's will;

19   - Was prevented by YWS from engaging in "other obligations [which] interfere with the

20     timely performance" of YWS work;

21   - Was required to "provide all of his own insurance for general liability, errors and

22     omissions, casualty, etc., as he deems necessary and appropriate;"

23   - Was not entitled to any benefits, such as, premium overtime pay, worker's

24     compensation, health plans, retirement plans, disability insurance, vacation pay, sick

25     leave and the like;" and

26   - Was solely responsible for paying his own social security and income taxes per federal

27

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and state law.

2    *Id.* ¶ 25.  In addition, Plaintiff had a non-compete clause in his Employment Agreement.  *See id.*

3    ¶ 28.

4            On March 15, 2017, Plaintiff was assigned by Defendant YWS to an Army Corps of

5    Engineers construction project at the United States Army Garrison Facility, Presidio of Monterey

6    in Monterey, California ("the Monterey Presidio Project").  *Id.* ¶ 29.  CTE Cal, Inc., the

7    subcontractor on the project, used YWS's services to find Plaintiff.  *Id.*  Pursuant to his

8    compensation agreement, Plaintiff was to be compensated $50.00 per hour for providing services

9    to CTE Cal on the Presidio Project.  *Id.* ¶ 30.  Under CTE Cal's contract, however, Plaintiff was to

10   be compensated $68 per hour.  *Id.* ¶ 34.  On October 21, 2017, CTE Cal left the Presidio Project

11   following a nonpayment by the general contractor—this terminated CTE's Service Agreement

12   with Defendant YWS.  *Id.* ¶ 38.  CTE Cal still paid Defendant YWS for services under the CTE

13   Service Agreement and Plaintiff was compensated pursuant to his Employment Agreement.  *Id.*

14           On April 20, 2017, federal litigation ensued regarding various alleged construction defects

15   and nonpayment claims arising from the Monterey Presidio Project.  *Id.* ¶ 39.  The litigation was

16   between Halbert Construction Company, Inc. (the general contractor on the project), CTE Cal. and

17   McCullough Plumbing, Inc. (another subcontractor).  *Id.*  McCullough sued Halbert and Halbert

18   filed a third-party complaint against CTE Cal for breach of contract related to alleged construction

19   deficiencies.  CTE Cal counterclaimed for nonpayment.  *Id.* ¶ 40.

20           CTE Cal identified Plaintiff as a possible witness.  *Id.* ¶ 41.  In March 2019, Plaintiff sat

21   for a deposition and as the case neared trial, Plaintiff was advised that CTE Cal intended to

22   subpoena him to testify at trial.  *Id.*  On May 16, 2019, Plaintiff prepared and executed a

23   declaration, which CTE Cal used for pre-trial motions, that set forth details concerning the nature

24   of Plaintiff's employment at YWS.  *Id.* ¶ 42.  Plaintiff was subpoenaed by CTE Cal to testify at

25   trial; CTE Cal arranged and paid for Plaintiff's travel accommodations to San Diego.  *Id.* ¶ 43.

26   Before the trial, on or around July 12, 2019, Defendant Yarbrough contacted Plaintiff by telephone

27   Case No.: 5:19-cv-05896-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS
                                                    4

1  and advised him that he was prohibited from testifying at the trial and that if he testified, his

2  employment with YWS would be terminated. *Id.* ¶ 44. Plaintiff still flew to San Diego to testify,

3  but ultimately was not called to testify. *Id.* ¶ 45.

4         On or around August 6, 2019, Defendant Yarbrough demanded reimbursement from

5  Plaintiff for any fees Plaintiff had received from CTE Cal for testifying in the litigation. *Id.* ¶ 46.

6  Plaintiff told Defendant Yarbrough that he had not received any fees or compensation. *Id.*

7  Defendant Yarbrough then informed Plaintiff by telephone that he was terminated from his

8  employment with YWS. *Id.* At the time, Plaintiff was assigned to a construction project at a

9  naval base in Monterey, California. *Id.* Following his termination, he was no longer allowed to

10  access the project. *Id.*

11         **B. Procedural History**

12         On September 20, 2019, Plaintiff filed his Complaint alleging that Defendants violated

13  RICO, 18 U.S.C. § 1962(c) and committed (1) unlawful business practices in violation of

14  California Business & Professions Code 17200, (2) unfair business practices in violation of

15  California Business & Professions Code 17200, (3) wrongful termination in violation of public

16  policy, and (4) wrongful termination in breach of the covenant of good faith and fair dealing. *See*

17  *generally* Compl. On January 21, 2020, Defendants filed a motion to dismiss Plaintiff's

18  Complaint pursuant to Rule 12(b)(6). Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

19  ("Mot"), Dkt. 12. In this same motion, Defendants filed a request for judicial notice. Defendants'

20  Request for Judicial Notice in Support of Defendants' Motion to Dismiss ("RJN"), Dkt.12-1. On

21  February 4, 2020, Plaintiff filed an opposition. Memorandum of Points and Authorities in

22  Opposition to Defendants' Motion to Dismiss ("Opp."), Dkt. 18. Defendants filed their reply on

23  February 11, 2020. Defendants' Reply Brief in Support of Defendants' Motion to Dismiss

24  ("Reply"), Dkt. 20. Along with their reply brief, Defendants filed a second request for judicial

25  notice. Defendants' Second Request for Judicial Notice in Support of Defendants' Motion to

26  Dismiss ("RJN 2"), Dkt. 19.

27

28

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

*United States District Court*
*Northern District of California*

1          **II.      LEGAL STANDARD**

2          To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

3    matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*,

4    556 U.S. 662, 678 (2009) (discussing Federal Rule of Civil Procedure 8(a)(2)).  A claim has facial

5    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

6    inference that the defendant is liable for the misconduct alleged. *Id.*  The requirement that the

7    court "accept as true" all allegations in the complaint is "inapplicable to legal conclusions." *Id.*  It

8    is improper for the court to assume "the [plaintiff] can prove facts that it has not alleged" or that

9    the defendant has violated laws "in ways that have not been alleged." *Associated Gen.*

10   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

11         If there are two alternative explanations, one advanced by the defendant and the other

12   advanced by the plaintiff, both of which are plausible, the "plaintiff's complaint survives a motion

13   to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal

14   can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged

15   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

16   1990).  Hence, when a claim or portion of a claim is precluded as a matter of law, that claim may

17   be dismissed pursuant to Rule 12(b). *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975

18   (9th Cir. 2010) (discussing Rule 12(f) and noting that 12(b)(6), unlike Rule 12(f), provides

19   defendants a mechanism to challenge the legal sufficiency of complaints).  However, a complaint

20   should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts

21   in support of the claim that would entitle the plaintiff to relief. *No. 84 Employer-Teamster Joint*

22   *Council v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).

*(left margin)* United States District Court  Northern District of California

23

24

25

26

27

28
Case No.: 5:19-cv-05896-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.   DISCUSSION[2]**

Defendants first argue that Plaintiff's RICO claim fails to adequately allege fraud and a pattern of racketeering activity.  *See* Mot. at 3–5.  Defendants next argue that Plaintiff's state law claims are barred under the federal enclave doctrine.  *Id.* at 8.  The Court addresses each in turn.

**A.  RICO Claim**

RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or the collection of unlawful debt."  18 U.S.C. § 1962(c).  A violation of § 1962(c), the section on which Plaintiff relies, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

"To support the mail and wire fraud allegations, the plaintiffs must plausibly allege 'the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises,' and that [defendants] communicated, or caused communications to occur, through the U.S. mail or interstate wires to execute that fraudulent scheme."  *George v. Urban Settlement Servs.*, 883 F.3d 1242, 1254 (10th Cir. 2016) (citation omitted).  Because Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead mail and wire fraud with particularity, the plaintiff must set forth, with detail, the time, place, and contents of the alleged false representation.  *Id.*  Defendants argue that Plaintiff has failed to adequately plead the predicate acts of mail and wire fraud.  Mot. at 3.  Plaintiff alleges that Defendants engaged in the

---

[2] Defendants request for the Court to take judicial notice of several exhibits.  First, Defendants request for the Court to take judicial notice of the history of the Presidio of Monterey.  *See* RJN, Ex. A.  Second, Defendants request for the Court to take judicial notice of various public court documents.  *See* RJN 2, Exs. A, 1, B, C.  Federal Rule of Evidence 201(b) permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute," that is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Specifically, a court may take judicial notice of matters of public record.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  Because the exhibits sought to be noticed are "matters of public record," Defendants' request for judicial notice is **GRANTED.**
Case No.: 5:19-cv-05896-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
7

1    predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). Compl. ¶¶ 69–

2    70. Defendants argue that the Complaint fails to allege the predicate acts with sufficient

3    particularity. Mot. at 3–4. Defendants also argue that because Plaintiffs' fraud claim rest on

4    misrepresentation of law, it does not amount to actionable fraud. *Id.* at 4 (citing *Miller v.*

5    *Yokohama Tire Corp.*, 358 F.3d 616 (9th Cir. 2004)).

6            In *Miller*, the Ninth Circuit held that an employer's misrepresentation of law to its

7    employees does not constitute actionable fraud. 358 F.3d at 621. There, Christopher Miller sued

8    his former employer, Yokohama Tire Corporation, for RICO violations. *Id.* at 618–19. Miller

9    worked for Yokohama from 1990 until 2001. *Id.* at 618. Miller alleged that throughout his eleven

10   years of employment, he was ordered to work many overtime hours for which he was never paid

11   additional compensation. *Id.* He claimed that various Yokohama managers falsely represented to

12   him and other employees that they were not entitled to overtime pay because they were salaried.

13   *Id.* Because Yokohama mailed him and other employees their paychecks or pay stubs twice

14   monthly and their W-2s annually (or sent these items via wire transfers), Miller contended that the

15   scheme to deny overtime pay was furthered through these paycheck-related mailings and wire

16   transfers. *Id.* at 619. Hence, Miller argued that every time the Yokohama managers[3] sent him or

17   other employees a paycheck or W-2, they committed a predicate act of mail or wire fraud and

18   violated RICO (18 U.S.C. § 1962(c)). *Id.* at 619, 620. Miller's theory of fraud, however, was not

19   actionable because the misrepresentation—*i.e.*, that he and his coworkers were not entitled to

20   overtime pay—was a misrepresentation of law. Such misrepresentations are not actionable. *Id.* at

21   622.

22           Plaintiff's theory of fraud is that Defendants mischaracterized YWS construction workers'

23   status to clients. In Plaintiff's view, Defendants misled their contractor-clients into believing that

24

25   _____

[3] Miller brought this same claim against Yokohama. The Ninth Circuit determined that Miller's
26   RICO claim against Yokohama failed because Miller premised Yokohama's liability on a
respondeat superior theory. *Miller*, 458 F.3d at 619–20. That reasoning, however, is irrelevant to
27   this Order and so this Court does not address that portion of the *Miller* order.

Case No.: 5:19-cv-05896-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

1    YWS construction workers were employees when, in fact, the workers were independent

2    contractors.  Opp. at 6.  Plaintiff argues that this misrepresentation differs from the

3    misrepresentation analyzed in *Miller* because Defendants did not make the misrepresentations to

4    YWS employees.  *Id.* at 5.  This is a distinction without a difference.  In determining whether or

5    not a misrepresentation is legal or factual, the question is not to *whom* the misrepresentation was

6    made, but rather *what* the contents of the misrepresentation are.  *See Miller*, 358 F.3d at 621

7    ("Statements about domestic law are normally regarded as expressions of opinion which are not

8    actionable in fraud even if they are false.").  Hence, the relevant inquiry is—does Plaintiff allege

9    that Defendants made a misrepresentation of fact *or* of law?

10           Plaintiff alleges that Defendants defrauded contract-clients by misrepresenting the status of

11   YWS construction workers.  This is a misrepresentation of law—the allegation focuses on the

12   construction workers' employment status.  Indeed, a "statement that an individual is a contractor,

13   vendor, or an employee of a contractor, is a statement of law."  *Bernal v. FedEx Ground Package*

14   *Sys. Inc.*, 2015 WL 4273034, at *3 (C.D. Cal. July 14, 2015) (citing *Harris v. Vector Mktg. Corp.*,

15   656 F. Supp. 2d 1128, 1136 (N.D. Cal. 2009)).  As noted, misrepresentations of law cannot form

16   the basis of a fraud claim.[4]  *Id.* at 621.

17          *Tronsgard v. FBL Financial Group, Inc.* is instructive.  312 F. Supp. 3d 982 (D. Kan.

18   2018).  There, the court held that the plaintiffs' complaint failed to allege facts supporting a RICO

19   predicate act because the alleged fraudulent statements did not involve a misrepresentation of fact.

20   *Id.* at 991 (citing *Miller*, 358 F.3d at 620–21).  As in *Miller*, the plaintiffs premised their RICO

21   claims on purported acts of mail and wire fraud involving their employers' alleged

22   misrepresentations about their employment classification.  *Id.*  The plaintiff argued that factual

23

24

---

[4] There are four exceptions to this rule.  A misrepresentation of law is actionable where the party
25   making the misrepresentation: (1) purports to have special knowledge; (2) stands in a fiduciary or
     similar relation of trust and confidence to the recipient; (3) has successfully endeavored to secure
26   the confidence of the recipient; or (4) has some other special reason to expect that the recipient
     will rely on his opinion.  *Miller*, 358 F.3d at 621.  None of these exceptions appear to be present
27   here and Plaintiff does not argue that one is present.  *See generally* Opp.

United States District Court
Northern District of California

1   issues existed as to whether or not the defendants properly classified the plaintiffs as independent

2   contractors.  *Id.* at 994.  In the context of alleging mail or wire fraud, however, the court merely

3   considers the alleged misrepresentations that the defendant made.  *Id.*  Hence, after assessing the

4   alleged misrepresentation—*i.e.*, that the plaintiffs were independent contractors—the court

5   determined that the plaintiffs alleged a legal misrepresentation and not a misrepresentation of fact.

6   *Id.*

7           Likewise, here, Plaintiff's allegation that Defendants misrepresented his and other YWS

8   construction workers' employment status is a misrepresentation of law.  The alleged

9   misrepresentation is nearly identical to that of *Miller* and *Tronsgard*—as in those cases, the

10  alleged misrepresentation focuses on misstatements about Plaintiff's employment status.  *See* Opp.

11  at 6 ("[Defendants] knowingly carried out a material scheme to defraud its contractor clients by

12  misrepresenting to them the *status* of YWS employees." (emphasis added)).  The Complaint

13  alleges that Defendants lied to contractor-clients by stating that YWS construction workers were

14  employees when, in fact, they were independent contractors.  As established, this is a legal

15  representation.  *See e.g.*, *Tronsgard*, 312 F. Supp. 3d at 994.  It appears that, like the plaintiff in

16  *Miller*, Plaintiff is attempting to "transform a California state law wage and hour claim into a

17  federal RICO claim under 18 U.S.C. § 1962(c)."  358 F.3d at 618.

18          Contrary to Plaintiff's position, *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639

19  (2009) does not change this analysis.  *Bridge* does not disrupt the requirement that a plaintiff must

20  plead a fraudulent misrepresentation of fact to support the predicate act requirement.  Rather,

21  *Bridge* only held that a plaintiff need not show reliance.  553 U.S. at 649; *see also Tronsgard*, 312

22  F. Supp. 3d at 994 ("*Bridge* merely held that a plaintiff need not show reliance; it never held that a

23  federal mail fraud claim does not require the other elements of a common law fraud claim—such

24  as the existence of a material misrepresentation of fact.").

25          Because Plaintiff's predicate act allegations rest on a misrepresentation of law, the Court

26  **GRANTS** Defendants' motion to dismiss Plaintiff's RICO claim.  When dismissing a complaint

27  Case No.: 5:19-cv-05896-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
    DISMISS

10

*United States District Court*
*Northern District of California*

1  for failure to state a claim, a court should grant leave to amend "unless it determines that the

2  pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d

3  1122, 1127 (9th Cir. 2000).  It may be possible that Plaintiff could plead facts showing that

4  Defendants misrepresented facts about YWS construction workers' employment status.

5  Accordingly, Plaintiff may file an amended complaint as to his RICO claim no later than **June 26,**

6  **2020**.[5]

7               **B.  State Law Claims**[6]

8        Defendants next argue that Plaintiff's second through fifth causes of action must be

9  dismissed because they are barred under the federal enclave doctrine.  Mot. at 8.  While Plaintiff

10  concedes that the Monterey Presidio is a federal enclave, he argues that because the federal

11  government has enacted legislation stating that State wage-and-hour law applies to federal

12  enclaves, his state law causes of action are not barred.  *See* Opp. at 13.  In the alternative, Plaintiff

13  argues that even if the federal enclave doctrine bars these causes of action, he has plead sufficient

14  facts to show that Defendants did not perpetrate their tortious acts exclusively on federal enclaves.

15        Under the U.S. Constitution, the United States has the power to acquire land from the

16  states for certain unspecified uses and to exercise exclusive jurisdiction over such lands.  These

17  lands are known as "federal enclaves." *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031,

18  1034 (N.D. Cal. 2005).  Article 1, Section 8, Clause 17 grants Congress the power to "exercise

19  exclusive legislation in all cases whatsoever" over all places purchased with the consent of a state

20  "for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." *Id.*  The

21  power to exercise "exclusive legislation" holds the same meaning as "exclusive jurisdiction." *Id.*

22  (quoting *Surplus Trading Co. v. Cook*, 281 U.S.647, 652 (1930)).  Exclusive jurisdiction "assumes

23  the absence of any interference with the exercise of the functions of the Federal Government

24  and . . . debar[s] the State from exercising any legislative authority, including its taxing and police

25

26  [5] Because it is unnecessary, this Court does not address Defendants' other RICO arguments.
[6] While the Court held that Plaintiff's federal RICO claim must be dismissed, the Court retains

27  diversity jurisdiction over Plaintiff's state law claims. *See* Compl. ¶ 9.
Case No.: 5:19-cv-05896-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    power, in relation to the property and activities of individuals and corporations within the

2    territory." *Silas Mason Co. v. Tax Comm'n of Wash.*, 302 U.S. 186, 197 (1937); *see also S.R.A.,*

3    *Inc. v. Minnesota*, 327 U.S. 558 (1946) (noting that exclusive legislative power is "in essence

4    complete sovereignty" because the federal property is immune from state taxation and from "state

5    laws, not adopted directly or impliedly by the United States").

6         On federal enclaves, in the absence of federal legislation displacing state law, those state

7    laws that existed at the time that the enclave was ceded to the federal government remain in force.

8    *Paul v. United States*, 371 U.S. 245, 268 (1963).  Three exceptions exist to this rule: (1) where

9    Congress has, by statute, provided a different rule; (2) where the state explicitly retained the right

10   to legislate over specific matters at the time of cession; and (3) where minor regulatory changes

11   modify laws existing at the time of cession.  *United States v. Sharpnack*, 355 U.S. 286, 294–95

12   (1958).  Federal enclaves are thus typically under the exclusive jurisdiction of the United States,

13   meaning the property and activities of individuals and corporations within that territory are also

14   under federal jurisdiction.  *See Swords to Plowshares*, 423 F. Supp. 2d at 1034.

15        The California Legislature ceded the Monterey Presidio to the United States Government

16   in 1897.  Mot at 8; *see also* RJN, Ex. A.  It is not contested by the Parties and the case law

17   supports that, when California ceded the Presidio to the United States, exclusive jurisdiction over

18   that area was conferred upon the United States.  *Standard Oil Co. v. People of State of Cal.*, 291

19   U.S. 242, 244 (1934).  Because the state laws on which Plaintiff relies were enacted *after* the

20   federal government acquired the Monterey Presidio, Plaintiff argues that California law applies on

21   federal enclaves.

22        Plaintiff cites to 40 U.S.C. § 3172 and 26 U.S.C. § 3305(d) to support his argument that

23   California law applies to the Presidio.  Opp. at 13.  Neither of these statutes, however, support

24   Plaintiff's argument.  These statutes vest California with authority to enforce its labor laws on

25   federal enclaves—neither statute provides for a private right of action.  40 U.S.C. § 3172(a) states

26   that "[t]he *state authority* charged with enforcing and requiring compliance with the state workers'

27   Case No.: 5:19-cv-05896-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

1   compensation laws . . . may apply the laws to all land and premises in the State which the Federal

2   Government owns or holds." (emphasis added). This waiver of jurisdiction however is limited to

3   "the state authority." *See* 40 U.S.C. § 3172(b) ("Limitation on relinquishing jurisdiction. The

4   Government under this section *does not relinquish its jurisdiction for any other purpose*."

5   (emphasis added)). Likewise, 26 U.S.C. § 3305(d) states that while unemployment compensation

6   law cannot be evaded on federal enclaves, only the "State shall have full jurisdiction and power to

7   enforce the provisions of such law . . . as though such place were not owned, held, or possessed by

8   the United States." Thus, neither statute provides for a private cause of action. The statutes only

9   allow for California or its agencies to enforce compliance with worker's compensation laws. *See*

10  *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) ("[P]rivate rights of action to enforce federal

11  law must be created by Congress."). Plaintiff's use of *S. G. Borello & Sons Inc. v. Department of*

12  *Industrial Relations*, 769 P.3d 399 (Cal. 1989) is thus unpersuasive; that case involved the

13  California Department of Industrial Relations, which is a state authority. Accordingly, Section

14  3172 and Section 3305(d) are unhelpful to Plaintiff.

15          In the alternative, Plaintiff argues that even if the federal enclave doctrine applies, it is

16  irrelevant to Plaintiff's Complaint since many of the alleged tortious acts occurred outside of

17  federal enclaves. Opp. at 11. Pursuant to the above analysis, Plaintiff's state-law wage and hour

18  claims that stem from the Monterey Presidio project are barred by the federal enclave doctrine.

19  Likewise, any claims stemming from projects on federal lands are barred. The issue thus becomes

20  whether or not Plaintiff has plead sufficient facts about non-federal enclave projects to support his

21  wage-and-hour and wrongful termination claims. The Court finds that Plaintiff has.

22          Plaintiff first contends that the point of the allegations pertaining to the Monterey Presidio

23  Project were to provide context about the severity and scope of Defendants' scheme so as to

24  support the RICO claim. Opp. at 12. Plaintiff maintains that the California Labor Code violations

25  are unrelated to Plaintiff's services at the Presidio of Monterey. The Court agrees. The Complaint

26  alleges that Defendants required him to enter into an illegal agreement accepting his

27

28  Case No.: 5:19-cv-05896-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
    DISMISS

United States District Court
Northern District of California

1    misclassification as an independent contractor and that this violated California Business and

2    Professions Code.  *See* Compl. ¶¶ 80–95 (Counts II & III); *see also supra* I.A. (recounting the

3    alleged labor violations).  This is an actionable.  *See Dynamex Operations W v. Superior Court*,

4    416 P.3d 1 (Cal. 2018); *see also Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1004 (N.D. Cal.

5    2016).  The "illicit agreement" exists outside of the federal enclave.  Indeed, Plaintiff had to enter

6    this agreement regardless of where he performed construction services—the agreement was

7    applied to *all* contracted services (private, state, *or* federal).  Plaintiff has pled sufficient facts to

8    show that the agreement applied equally to his non-federal projects.  These projects can support

9    Plaintiffs' unfair/unlawful business practices claims.[7]

10         Plaintiff next argues that the alleged witness tampering, which support his wrongful

11   termination claims (counts four and five), is not barred by the federal enclave doctrine.  In

12   Plaintiff's view, because the facts giving rise to these claims occurred outside of the federal

13   enclave and a year after Plaintiff stopped working on the Monterey Presidio project, the federal

14   enclave doctrine does not apply to these claims.  Defendants argue that these claims are still barred

15   because the federal enclave doctrine applies even in circumstances where the alleged wrongful

16   conduct occurs off the enclave.  Reply at 9.  The Court disagrees with Defendants.

17         *Powell v. Tessada & Associates, Inc.* is instructive.  There, the court held that the federal

18   enclave doctrine still barred the plaintiffs' state law claims even though the decision to fire the

19   plaintiffs was made off the federal enclave.  2005 WL 578103, at *1 (N.D. Cal. 2005).  Notably, in

20   *Powell*, the plaintiffs worked *only* on the federal enclave and the decision to fire the plaintiffs was

21   a decision about employment practices *on* the federal enclave.  *Id.* at *2.  Here, in contrast,

22   Defendants' decision to fire Plaintiff had nothing to do with his work on a federal enclave.  To the

23   contrary, Plaintiff alleges that Defendants terminated him to stop him from talking.  Hence, the

24   termination decision had nothing to do with "employment practices on the federal enclave."

25

26   [7] As noted, Plaintiff's work on the Monterey Presidio Project or on other federal enclaves cannot
     form the basis of Plaintiff's unfair/unlawful business practices claims.  A contrary ruling would
27   permit plaintiffs to circumvent the federal enclave doctrine.

Moreover, unlike the *Powell* plaintiffs, Plaintiff did not work exclusively on a federal enclave. Rather, Plaintiff worked on both commercial and government projects. In other words, he worked generally for Defendant YWS; his work was not exclusively on federal enclaves. Indeed, the decision to terminate Plaintiff prevented Plaintiff from working on *all* YWS projects, regardless of whether such projects were on federal land. Accordingly, Plaintiff's unfair business practice and wrongful termination claims are not barred by the federal enclave doctrine.

**IV.      CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. Plaintiff may file an amended complaint as to his RICO claim by **June 26, 2020.** *See supra*. Plaintiff may not add new claims or parties without leave of the Court or stipulation by the Parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: May 7, 2020

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

15