UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETER ALBERS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>YARBROUGH WORLD SOLUTIONS, LLC, et al.,<br><br>　　　　　Defendants. | Case No.  5:19-cv-05896-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 29, 30 |

　　　　　This is Plaintiff Peter Albers' second attempt to plead facts to support his claim that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").  The First Amended Complaint again names Defendants Yarbrough World Solutions, LLC ("YWS") and Dally E. Yarbrough alleging violations of RICO and of California labor laws.  First Amended Complaint ("FAC"), Dkt. No. 25.  Plaintiff also seeks leave to file a Second Amended Complaint to bring suit against YWS on behalf of a putative class of YWS employees.  Plaintiff's Notice of Motion and Motion for Leave to Amend the Complaint ("Mot. to Amend"), Dkt. No. 30.  Defendants contend that this Court must dismiss Plaintiff's RICO claim and also the wrongful termination claims asserted against Defendant Yarbrough.  Defendants also oppose Plaintiff's motion for leave to amend the complaint.

　　　　　The Court took these motions under submission without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, the Court **GRANTS** Defendants' motion to dismiss and **GRANTS** Plaintiff's motion for leave to amend the complaint.

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

1

## I. BACKGROUND

### A. Factual Background

The Court's first dismissal order sets forth the factual background of Plaintiff's claims. Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("Dismissal Order"), Dkt. No. 22. The Court reviews allegations relevant to the instant motion to dismiss.

According to the allegations in the FAC, Plaintiff is a construction worker in California—he is not personally licensed by the California Contractors State License Board to perform construction services in the state of California. FAC ¶ 22. Defendants operate a "staffing solutions" company, which helps contractors find construction workers for large-scale commercial and government projects in California and across the United States. *Id*. ¶¶ 13, 14. Defendants provide contractors with a site representative and handle the compensation, benefits, and taxes for the construction workers "without the [contractor] having the additional overhead." *Id*. ¶ 14; *see also id*. ¶ 15. Plaintiff worked for Defendants from approximately 2006 until August 6, 2019. *Id*. ¶ 22.

Plaintiff alleges YWS represented to its contractor-clients that construction workers are YWS employees whose tax withholding and conferment of benefits are handled by YWS. *Id*. ¶ 20. Despite representing to its clients that YWS workers are employees, YWS allegedly forces its employees to sign "independent contractor/exclusion" waivers of the right to benefits, workers compensation, and employee status. *Id*. Moreover, Plaintiff alleges YWS did not provide its employees with any benefits or insurance, did not pay YWS's employer's share of state or federal taxes, and did not withhold any state or federal taxes from YWS employees. *Id*. ¶ 21. Defendants withheld these facts from their contractor clients. *Id*.

On March 15, 2017, Plaintiff was assigned by YWS to an Army Corps of Engineers construction project at the United States Army Garrison Facility, Presidio of Monterey in Monterey, California ("the Monterey Presidio Project"). *Id*. ¶ 31. CTE Cal, Inc., the subcontractor on the project, used YWS's services to find Plaintiff and entered into a service

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

2

agreement with YWS. *Id*. ¶¶ 31-32. Plaintiff alleges that CTE Cal relied on YWS's representations that it was a "staffing solutions" company that handled all compensation, benefits, and taxes to its employees, and thereby relieved CTE Cal from the burden of bringing on a new employee and having to administer the attendant compensation and benefits due to employees. *Id*. ¶ 34. Further, Plaintiff contends Defendant Yarbrough successfully endeavored to secure the confidence of its contractor clients, like YWS, who were the recipients of representations regarding the treatment and status of YWS employees. *Id*. ¶ 36.

On April 20, 2017, federal litigation ensued regarding various alleged construction defects and nonpayment claims arising from the Monterey Presidio Project. *Id*. ¶ 45. The litigation was between Halbert Construction Company, Inc. (the general contractor on the project), CTE Cal and McCullough Plumbing, Inc. (another subcontractor). *Id*. ¶ 46. McCullough sued Halbert and Halbert filed a third-party complaint against CTE Cal for breach of contract related to alleged construction deficiencies. CTE Cal counterclaimed for nonpayment. *Id*.

CTE Cal identified Plaintiff as a possible witness. *Id*. ¶ 47. In March 2019, Plaintiff sat for a deposition and as the case neared trial, Plaintiff was advised that CTE Cal intended to subpoena him to testify at trial. *Id*. On May 16, 2019, Plaintiff prepared and executed a declaration, which CTE Cal used for pre-trial motions, that set forth details concerning the nature of Plaintiff's employment at YWS. *Id*. ¶ 48. Plaintiff was subpoenaed by CTE Cal to testify at trial; CTE Cal arranged and paid for Plaintiff's travel accommodations to San Diego. *Id*. ¶ 49. Before the trial, on or around July 12, 2019, Defendant Yarbrough contacted Plaintiff by telephone and advised him that he was prohibited from testifying at the trial and that if he testified, his employment with YWS would be terminated. *Id*. ¶ 50. On July 13, 2019, Defendant Yarbrough contacted CTE Cal demanding both payment by CTE Cal for Plaintiff's testimony, as well as full indemnification of YWS and Defendant Yarbrough individually by CTE Cal for any action arising in any manner from the testimony of Plaintiff. *Id*. ¶ 52. Plaintiff still flew to San Diego to testify, but ultimately was not called to testify. *Id*. ¶ 55.

1  On or around August 6, 2019, Defendant Yarbrough demanded reimbursement from Plaintiff for any fees Plaintiff had received from CTE Cal for testifying in the litigation. *Id*. ¶ 56. Plaintiff told Defendant Yarbrough that he had not received any fees or compensation. *Id*. Defendant Yarbrough then informed Plaintiff by telephone that he was terminated from his employment with YWS. *Id*. At the time, Plaintiff was assigned to a construction project at a naval base in Monterey, California. *Id*. Following his termination, he was no longer allowed to access the project. *Id*. Plaintiff alleges that he provided services through YWS for years under threat of termination and compulsion of a one-year noncompete agreement imposed by the independent contractor agreement. *Id*. ¶ 61.

### B. Procedural History

On June 26, 2020, Plaintiff filed his FAC alleging that Defendants violated RICO, 18 U.S.C. § 1962(c) and committed (1) unlawful business practices in violation of California Business & Professions Code § 17200, (2) unfair business practices in violation of California Business & Professions Code § 17200, (3) wrongful termination in violation of public policy, and (4) wrongful termination in breach of the covenant of good faith and fair dealing. *See generally* FAC. On July 16, 2020, Defendants filed a motion to dismiss Plaintiff's FAC on the grounds that Plaintiff still failed to state a claim under RICO, that Plaintiff failed to state a claim against Defendant Yarbrough, and that the Court lacked personal jurisdiction over Defendant Yarbrough. Defendants' Motion to Dismiss Pursuant to Rule 12(b) ("Mtd."), Dkt. No. 29. On July 31, 2020, Plaintiff filed an opposition. Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Opp."), Dkt. No. 28. Defendants filed their reply on August 6, 2020. Defendants Reply to Plaintiff's Opposition Motion to Dismiss the First Amended Complaint ("Reply"), Dkt. No. 31.

Separately, On August 6, 2020, Plaintiff sought leave to amend his California Business and Professions Code § 17200 claims in order to bring such claims on behalf of himself and all YWS employees similarly situated. *See generally* Mot. to Amend. Plaintiff contends, that through the

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

4

independent investigation conducted by Plaintiff's counsel since the filing of the original complaint, it has been discovered that YWS has misclassified some or all of its employees as independent contractors. *Id*. 1-2.  On August 13, 2020, Defendants filed an opposition. Defendants' Opposition to Plaintiff's Motion for Further Leave to Amend His Complaint ("Opp. Amend"), Dkt. No. 32.  Plaintiff filed a reply on August 27, 2020.  Reply Memorandum of Point and Authorities in Support of Plaintiff's Motion for Leave to Amend Complaint ("Reply Amend"), Dkt. No. 33.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Federal Rule of Civil Procedure 8(a)(2)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.  The requirement that the court "accept as true" all allegations in the complaint is "inapplicable to legal conclusions." *Id*.  It is improper for the court to assume "the [plaintiff] can prove facts that it has not alleged" or that the defendant has violated laws "in ways that have not been alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

If there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible, the "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Hence, when a claim or portion of a claim is precluded as a matter of law, that claim may be dismissed pursuant to Rule 12(b).  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

5

(9th Cir. 2010) (discussing Rule 12(f) and noting that 12(b)(6), unlike Rule 12(f), provides defendants a mechanism to challenge the legal sufficiency of complaints). However, a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).

### B.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating jurisdiction exists. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). Where, as here, the motion is based on written materials rather than an evidentiary hearing, a court's only question is whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff cannot "simply rest on the bare allegations of its complaint," but undisputed allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

District courts have the power to exercise personal jurisdiction to the extent of the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)( A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988). California's long-arm jurisdictional statute is coextensive with federal due-process requirements, so the jurisdictional analysis for a nonresident defendant under state law and federal due process is the same. *See* Cal. Civ. Proc. Code § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the "minimum contacts" analysis, a court may obtain either general jurisdiction or specific jurisdiction over a nonresident defendant. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). If the defendant's activities are insufficient to

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

6

subject him to general jurisdiction, then the court looks to the nature and quality of the defendant's contacts in relation to the cause of action to determine specific jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

### C. Motion to Amend under Fed. R. Civ. P. 15(a)

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course within 21 days of service of the pleading. Fed. R. Civ. P. 15(a)(1). After that period, amendment is permitted only with the opposing party's written consent or leave of the court. *Id*. at 15(a)(2). Rule 15 instructs that "[t]he court should freely give leave when justice so requires." *Id*. This rule is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Courts commonly consider four factors when determining whether to grant leave to amend: (1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id*. (emphasis in original). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

## III. DISCUSSION

### A. Motion to Dismiss

Defendants first argue that Plaintiff's RICO claim still fails to adequately allege fraud and a pattern of racketeering activity. *See* Mtd. 3-6. Defendants next argue that Plaintiff fails to state a claim against Defendant Yarbrough for any state law claims and that the Court lacks personal jurisdiction over Defendant Yarbrough. The Court addresses each in turn.

#### i. RICO Claim

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

7

RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or the collection of unlawful debt." 18 U.S.C. § 1962(c). A violation of § 1962(c), the section on which Plaintiff relies, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

"To support the mail and wire fraud allegations, the plaintiffs must plausibly allege 'the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises,' and that [defendants] communicated, or caused communications to occur, through the U.S. mail or interstate wires to execute that fraudulent scheme." *Keates v. Koile*, 883 F.3d 1228, 1254 (9th Cir. 2018). Because Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead mail and wire fraud with particularity, the plaintiff must set forth, with detail, the time, place, and contents of the alleged false representation. *Id*. Plaintiff alleges that Defendants engaged in the predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). FAC ¶¶ 80-81.

**Misrepresentation of Law**

In dismissing Plaintiff's original RICO claim, this Court held Plaintiff's allegation that Defendants misrepresented his and other YWS construction workers' employment status was a misrepresentation of law and could thus not form the basis of Plaintiff's predicate fraud acts. Dismissal Order at 10. "'[A]s a general rule, . . . fraud cannot be predicated upon misrepresentations as to matters of law.'" *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir.2004) (citing Am.Jur.2d of Fraud and Deceit § 97 (2001)). Further, the court in *Miller* noted that there are four general exceptions to this rule:

> [w]here the party making the misrepresentation 1) purports to have special knowledge; 2) stands in a fiduciary or similar relation of trust and confidence to the recipient; 3) has successfully endeavored to secure the confidence of the recipient; 4) or has some other special reason to expect that the recipient will rely on his opinion[.]

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

8

1  *Id*. Plaintiff does not contest the notion that misstatements of law are not actionable. Instead,
2  Plaintiff relies on the Ninth Circuit's decision in *Miller*, 358 F.3d at 618-21,*supra*, to advance two
3  general arguments for why he has properly alleged mail and wire fraud.
4        First, Plaintiff cites *Miller* for the proposition that YWS's misstatements implicated fact
5  and are therefore actionable as fraud. *Miller* involved a former employee who brought an action
6  sounding in fraud against his managers for the alleged misrepresentation that he was not entitled to
7  overtime pay because he was an exempt salaried employee. *Id*. at 618. Plaintiff is correct that in
8  *Miller* the Ninth Circuit recognized misstatements involving both fact and law can be actionable if
9  it is the fraudulent statement of fact upon which plaintiffs detrimentally relied. *Id*. at 621.
10 However, the Ninth Circuit unambiguously found that the managers' statements that the former
11 employee was not entitled to overtime pay "did not include express or implied misrepresentations
12 of fact." *Id*. That the employee was an exempt salaried employee not entitled to overtime pay
13 certainly relied on factual assumptions. Yet, the Ninth Circuit focused on the core legal
14 proposition at the center of the managers' representations and not any factual assumptions on
15 which they based their opinions. The same result is appropriate here. The FAC alleges that
16 Defendants guarded against exposure of their false representations and scheme through illicit
17 agreements with their employees, thus making this a litigation involving a complex scheme by
18 Defendants to induce clients to retain their services while silencing their employee's disclosure of
19 the scheme. FAC ¶ 50-57. However, the central issue remains whether Defendants
20 misrepresented the classification of Plaintiff and its other construction workers status as
21 independent contractors. Any factual assumptions underlying the legal opinion do not transform
22 the claim from one of law to fact.
23       Second, Plaintiff contends that the exceptions in *Miller* apply here. Plaintiff alleges that
24 YWS and Defendant Yarbrough "had special knowledge of the terms of employment upon which
25 YWS employed construction workers throughout California and the United States." FAC ¶ 6.
26 However, as Defendants point out, Plaintiff's mail and wire fraud allegations sound in an alleged

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

9

misrepresentation of law Defendants made to YWS's clients concerning the employment status of YWS subcontractors. Mtd. at 4; *see also* FAC ¶¶ 32-36. The Court cannot see how YWS and Defendant Yarbrough would have some special knowledge of employment law in this context where YWS's clients are construction business entities performing "large scale commercial and government projects in California and throughout the United States." FAC ¶ 13.

Plaintiff's allegations, similarly, do not demonstrate Defendants "endeavor [] to secure the confidence" of contractors to induce them to enter into valuable contracts with YWS. *Id.* ¶ 61. In regard to that exception, *Miller* stated that the comments to the Restatement (Second) of Torts § 542 (1977), explained that the securing confidence rule is "usually applicable to situations where 'the maker gains the other's confidence by stressing their common membership in a religious denomination, fraternal order, or social group or the fact that they were born in the same locality.'" *Miller*, 358 F.3d at 622 (quoting Restatement (Second) of Torts § 542(c), cmt. h). The Ninth Circuit remarked that the only illustration given in the Restatement is a situation where after years of giving an elderly widow good investment advice, a "friend" advises her to buy worthless stock from him. *Id.* Here, as in *Miller*, the facts presented by Plaintiff are not like the illustration nor has Plaintiff alleged any facts indicating that YWS and Defendant Yarbrough specially endeavored to secure the confidences of its clients. YWS offered its services to customers like CTE Cal, and Plaintiff does not cite to any case that applied this exception to a business relationship like the one pleaded here.

Finally, no other special reason supports an allegation that YWS and Defendant Yarbrough would have expected their clients to rely on their opinion. Plaintiff alleges Defendants have a "specific and special reason, in particular the inclusion and enforcement of noncompete and no solicitation clauses in YWS contracts, to expect that contractors would rely on the representations made with respect to the status of YWS employees." FAC ¶ 66. However, *Miller* noted that this exception is typically applied to cases "in which the maker of the representation knows of some special characteristic of the recipient, such as lack of intelligence . . . which gives the maker

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

10

special reason to expect the opinion to be relied on." *Miller*, 358 F.3d at 622 (quoting Restatement (Second) of Torts § 542(c), cmt. I). Like in *Miller*, there is no claim that YWS's clients particularly lack intelligence or are particularly gullible, nor is there any allegation that YWS and Defendant Yarbrough prayed on any such traits. *See id.* (finding "special reason" exception did not apply because employees falsely told by managers that they were not entitled to overtime pay did not have some special characteristic which gave the managers special reason to expect the opinion would be relied on). Therefore, this exception is not applicable to Plaintiff's claim.

**Witness Tampering and Retaliation**

In the alternative, Plaintiff argues that even without the predicate acts of mail and wire fraud, the RICO claim can be sustained on the predicate acts of witness tampering and witness retaliation. Opp. at 12-13. Defendants argue that Plaintiff has still failed to establish a pattern of racketeering sufficient to state a RICO claim. To amount to a "pattern" of racketeering activity, there must have been "at least two [predicate] acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). But although two predicate acts are necessary for a pattern, they are not sufficient alone. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989).

The Ninth Circuit addressed the RICO pattern requirement in detail in *Sever v. Alaska Pulp Corporation*, noting that identifying such a pattern has "proven a challenging task for courts." 978 F.2d 1529, 1535 (9th Cir. 1992). In that case, the Circuit identified two factors that led it to conclude that no "pattern" existed in the case before it. First, "although [Plaintiff] alleges a number of 'acts,' [Defendants'] collective conduct is in a sense a single episode having the singular purpose of impoverishing [Plaintiff], rather than a series of separate, related acts," and second "there is no suggestion that these defendants would have continued [their criminal acts], or that they ever intended anyone but [Plaintiff] any harm." *Id*.

The same two factors are present in this case. Plaintiff's FAC makes it clear that any fraudulent acts perpetuated by Defendants were in service of a single goal—preventing Plaintiff

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND
11

from giving testimony in a federal trial—rather than a series of separate but related criminal aims. As in *Sever*, this conclusion is reinforced by the fact that there is but a single victim of the alleged "pattern." The alleged RICO scheme here, was a "cover up" of Defendants' alleged fraud by threatening to terminate Plaintiff's employment if he testified and then retaliating against Plaintiff by firing him when efforts to keep him from testifying failed. FAC ¶¶ 73-96. Other circuits have reached the same conclusion on similar facts to those here. *See, e.g.*, *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1267 (11th Cir. 2004) ("[W]here the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer [than ninth months]."); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (noting that it is "virtually impossible" to show a pattern of racketeering activity for a "single scheme" with a "single injury" and "few victims"); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) (holding that multiple predicate acts failed to show a pattern where the acts "constituted a single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons"). Accordingly, Plaintiff's RICO claim still fails to establish a pattern of racketeering activity.

For these reasons, the Court holds that Plaintiff has not amended his complaint to allege predicate acts that establish a pattern of racketeering activity. Thus, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's RICO claim. Because further amendment would be futile, the Court declines to afford Plaintiff another opportunity to amend his complaint. *See Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile.").

### ii.   Wrongful Termination Claims Against Defendant Yarbrough

Defendants contend that Plaintiff's state law claims for wrongful termination in violation of public policy and breach of the covenant of good faith and fair dealing asserted against Defendant Yarbrough must be dismissed for failure to state a claim because he is protected by

1  YWS's liability shield.  Mtd. at 6.  Defendants argue further that the Court lacks personal

2  jurisdiction over Defendant Yarbrough because Plaintiff has not plead that Defendant Yarbrough

3  has sufficient contacts with California to support a finding of general or specific jurisdiction.  *Id.*

4  at 7.

**Failure to State a Claim**

Under California law, the alter ego liability of members or managers of a foreign limited liability company are governed by the law of the state of the LLC's formation.  Cal. Corp. Code § 17708.01(a).  Because YWS is a Arizona limited liability company, the Court looks to the Arizona Liability Company Act which provides that a member of an LLC is not liable, solely by reasons of being a member, for the debts, obligations and liabilities of the LLC whether arising in contract or tort, under a judgement, decree or order of a court or otherwise.  Ariz. Rev. Stat. § 29-651.

Here, Plaintiff has not plead any allegations that would suggest Defendant Yarbrough "so dominates and controls" YWS such that its 'distinct corporate existence' should be overlooked.  *See Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37 (1991) (citing *Walker v. Sw Mines Dev. Co.*, 52 Ariz. 403, 414-15 (1938).  As such, Plaintiff has not pleaded why Defendant Yarbrough was not entitled to YWS's liability shield under Arizona's Liability Company Act.

Nonetheless, Plaintiff argues Defendant Yarbrough is independently liable because his conduct as manager was "deliberate, cold, callous, malicious, oppressive, and intentional" and taken "in order to injure Plaintiff."  Opp. at 14; *see also* FAC ¶ 116.  However, while Plaintiff may state a claim for wrongful termination in violation of public policy as to the employer, it is well established under California law that he may not assert such a claim against an individual supervisor or manager such as Defendant Yarbrough.  *See Khajavi v. Feather River Anesthesia Med. Group*, 84 Cal. App. 4th 32, 53 (2000) ("As a matter of law, only an employer can be liable for the tort of wrongful termination in violation of public policy."); *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 576–77 (1998) (reviewing relevant cases and concluding that plaintiff may not sue his employer's paymaster for wrongful discharge, because the tort of

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

13

wrongful discharge "has its basis in the employer-employee relationship and [the paymaster] was not plaintiff's employer). Moreover, Plaintiff cannot state a claim for breach of the covenant of good faith and fair dealing against Defendant Yarbrough. Individuals who were not parties to a contract cannot be held liable for breaches related to those contracts. *See Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990); *see also Kim v. Regents of Univ. of Cal.*, 80 Cal. App. 4th 160, 164 (2000).

Thus, the Court **GRANTS** Defendants' motion to dismiss the wrongful termination in violation of public policy and breach of the covenant of good faith and fair dealing claims asserted against Defendant Yarbrough.

### Lack of Personal Jurisdiction Over Defendant Yarbrough

Defendants also contend this Court does not have personal jurisdiction over Defendant Yarbrough.[1] Plaintiff argues that Defendant Yarbrough is subject to personal jurisdiction because he "systematically and continuously conducts business in California, intentionally avails himself of the laws of California by transacting a substantial amount of business throughout the Northern District of California including . . . promotion, marketing, advertising, and provision of professional construction services for hire throughout California . . . . FAC ¶ 11. Because the Court finds that Defendant Yarbrough's actions are properly attributable to YWS and not to him individually, the Court **GRANTS** the motion to dismiss for lack of personal jurisdiction.

A court has general jurisdiction when the defendants engage in "continuous and systematic general business contacts . . . that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801 (internal quotations marks omitted). Plaintiff does not argue that Defendant Yarbrough's contacts with California are so pervasive as to justify the exercise of general jurisdiction. And the FAC reveals that Defendant Yarbrough is a resident of Arizona and does not hold any California professional or business licenses or an ownership interest or position in a California business. *See* FAC ¶ 9. Accordingly, the Court need only determine whether

---

[1] Because the Court held that Plaintiff's federal RICO claim must be dismissed, the Court only retains diversity jurisdiction over Plaintiff's state law claims. *See* FAC. ¶ 9

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

14

Defendant Yarbrough has sufficiently established that the Court may exercise specific jurisdiction over him.

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. *Rano v. Sipa Press Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The analysis for specific jurisdiction is as follows:

> (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). Additionally, where Plaintiff has sued both a corporation and its officers, the fiduciary-shield doctrine generally applies. Under that doctrine, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984) and *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521 (9th Cir. 1989)). Indeed, "[f]or jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals." *Id.* But the corporate form may be ignored (1) where the corporation is the agent or alter ego of the individual defendant, *Flynt Distrib Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984), or (2) where a corporate officer or director authorizes, directs, or participates in tortious conduct, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985).

Here Plaintiff's assertion that Defendant Yarbrough is subject to personal jurisdiction in California is based exclusively on his status as a principal of YWS. Plaintiff has failed to allege that Defendant Yarbrough has undertaken any personal contacts with California. Furthermore,

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

15

1  Plaintiff has not alleged any facts suggesting that the Court should ignore the corporate form or

2  that YWS is the alter ego of Defendant Yarbrough.  Additionally, Plaintiff does not demonstrate

3  that Defendant Yarbrough was a primary participant in the alleged wrongful activities—separate

4  and apart from his role within YWS—sufficient to support a finding that Defendant Yarbrough

5  should be subject to suit in his personal capacity.  Because Plaintiff has not alleged sufficient facts

6  to demonstrate such personal participation, the Court finds that it lacks personal jurisdiction over

7  Defendant Yarbrough.

### B.  Motion to Amend

Next, Plaintiff argues that he should be granted leave to file a Second Amended Complaint because an investigation by Plaintiff's counsel has discovered that a class of individuals employed by YWS suffered the same injury as Plaintiff with regard to being wrongfully misclassified as independent contractors rather than employees.  Declaration of Catherine Coughlin ("Coughlin Decl.") ¶¶ 5-6.  Defendants oppose Plaintiff's motion for leave to amend on the four *Foman* factors.  The Court will address each argument in turn.  In addition, the Court will discuss Defendants' argument that Plaintiff cannot seek leave to amend because of repeated failures to cure deficiencies by previous amendments.  *See Foman*, 371 U.S. at 182.

#### i.  Undue Delay and Failure to Cure Deficiencies

The Court first considers undue delay and failure to cure complaint deficiencies together since Defendants make the same argument for both.  Defendants argue that Plaintiff unduly delayed in seeking amendment when a dispositive motion was pending and because Plaintiff's proposed Second Amended Complaint fails to cure deficiencies raised in the Court's Dismissal Order.  Opp. Amend at 3-5.  However, Defendants misconstrue the Court's Dismissal Order.  The Court denied Defendants' motion to dismiss Plaintiff's § 17200 claims, which are the focus of the proposed amendment.  Thus, the deficiencies that Defendants reference in their opposition are not of concern to Plaintiff's motion for leave to amend.  Furthermore, Plaintiff correctly highlights that his motion will be determined on the same day as Defendants' pending motion to dismiss.

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

16

1  Accordingly, the Court finds that Plaintiff has not failed to cure deficiencies or unduly delayed in
2  seeking amendment.

### ii. Prejudice to the Opposing Party

The Court next considers whether granting Plaintiff leave to amend would prejudice Defendants, as prejudice to the opposing party carries the "greatest weight" in the leave to amend inquiry. *Eminence Capital, LLC*, 316 F.3d at 1052. Prejudice has been found where the "parties have engaged in voluminous and protracted discovery" prior to amendment, or where "[e]xpense, delay, and wear and tear on individuals and companies" is shown. *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387–88 (9th Cir. 1990) (prejudice exists where permitting plaintiff to file an amended complaint will lead to "the nullification of prior discovery," increase 'the burden of necessary future discovery," and the "relitigation of a [previously-decided] suit").

Here, Defendants argue that a proposed complaint amendment would be prejudicial when Defendants have already incurred substantial litigation costs in moving to dismiss earlier iterations of the complaint, and would be subjected to further expenditure of time and expense associated with continued litigation to challenge another complaint iteration. Opp. Amend at 3. The record in this case does not indicate that permitting amendment would prejudice Defendants. At the time Plaintiff filed the motion for leave to amend, this case was and still is in the pleading stage, and no discovery has yet occurred. Therefore, this is not a case where the "parties have engaged in voluminous and protracted discovery" prior to amendment. *Kaplan*, 49 F.3d at 1370. Counsel for Plaintiff also advised Defendants early on in the litigation of the suitability of Plaintiff's claims under § 17200 for class treatment, and the likelihood that Plaintiff might seek by way of amendment to represent such a class. Coughlin Decl. ¶¶ 6-8. Furthermore, Defendants failed to put forth any argument suggesting that they were surprised by Plaintiff seeking to add a class claim. *Cf. Howard Rice Nemerovski Canady Falk & Rabkin v. Total Tech., Inc.*, No. C 06–0426 CW, 2006 WL 2850047, at *4 (N.D. Cal. Oct. 5, 2006) (court may deny motion to amend on

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

17

1  grounds of prejudice where "the party opposing the motion to amend has shown it is surprised by
2  new allegations in the amended pleading that will require more discovery or otherwise delay
3  resolution of the case") (citing *DCD Programs, Ltd.*, 833 F.2d at 186). For these reasons, the
4  Court finds that granting Plaintiff leave to amend would not prejudice Defendants.

### iii. Bad Faith

In deciding whether to grant a party leave to amend, the district court also considers whether the moving party acted in "bad faith." *Foman*, 371 U.S. at 182. Bad faith exists where, inter alia, the proposed amendment "will not save the complaint or the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999); *DCD Programs, Ltd.*, 833 F.2d at 187 (bad faith exists where party sought leave to amend "to destroy diversity and to destroy the jurisdiction of this court") (internal quotation marks omitted). Bad faith may also exist when a party repeatedly represents to the court that the party will not move to amend its complaint, and subsequently moves to amend once "the proverbial writing was on the wall" that the party will suffer an adverse judgment. *Trans Video Elec., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011) (finding bad faith when plaintiff "expressly reaffirmed to this Court on two separate occasions" that it was bringing one claim in patent infringement case, and only moved to amend to add additional claims when briefing on a motion for summary judgment was complete).

Here, Defendants argue that Plaintiff has failed to cooperate toward cost-effective litigation and motion practice because the motion for leave to amend was filed after having already lost a motion to dismiss, after filing an amended complaint, and in an attempt to circumvent Defendants' pending motion to dismiss. Opp. Amend at 1-2. As discussed above, Plaintiff's proposed amendment is concerned exclusively with state law claims for alleged violations of § 17200 that the Dismissal Order did not dismiss. In contrast, Defendants' pending motion to dismiss focuses primarily on Plaintiff's federal RICO claim and wrongful termination claims against Defendant Yarbrough. The lack of overlap between the two motions does not suggest an attempt by Plaintiff

1    to circumvent Defendants' motion to dismiss or an attempt to cure any deficiency presented by

2    Defendants.

3          The case Defendants cites in support of its argument that Plaintiff acted in bad faith is also

4    distinguishable.  In *Shlacter-Jones v. General Tel. of Cal.*, the court found bad faith where the

5    plaintiff sought leave to amend after the completion of discovery and while a summary judgement

6    motion was pending.  936 F.2d 435, 444 (9th Cir. 1991).  On appeal the Ninth Circuit affirmed,

7    observing that the motivation for amendment appeared to be an attempt to circumvent the pending

8    summary judgment motion.  *Id.*  Here, in contrast, Plaintiff sought leave to amend prior to any

9    discovery being conducted and without there being any possibility of the proposed amendment

10   affecting Defendants' motion to dismiss.  Accordingly, the Court finds that the record in this case

11   does not support a strong showing that Plaintiff sought leave to amend in bad faith.

        **iv.    Futility of Amendment**

13         Finally, a district court may deny a motion for leave to amend where amendment would be

14   futile.  *Foman*, 371 U.S. at 182.  "[A] proposed amendment is futile only if no set of facts can be

15   proved under the amendment to the pleadings that would constitute a valid and sufficient claim or

16   defense."  *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  The Ninth Circuit has

17   alternatively stated that the test of whether amendment would be futile is "identical to the one used

18   when considering the sufficiency of a pleading challenged under Rule 12(b)(6)."  *Id.* (citing 3 J.

19   Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974)).

20         Here, Defendants wrongly argue that Plaintiff's proposed Second Amended Complaint

21   would be futile because Plaintiff is attempting to bring his RICO claim and state law claims for

22   wrongful discharge on behalf of the proposed class without having corrected deficiencies in his

23   previous complaint.  Opp. Amend at 3-4.  The only claims that Plaintiff proposed for class

24   treatment are his § 17200 claims which were not dismissed by the Court's Dismissal Order.  As

25   such, Defendants have failed to make any viable argument for why Plaintiff's proposed

26   amendment would be futile.

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

19

Furthermore, Plaintiff highlights that the Ninth Circuit has noted the "unremarkable proposition that often the pleadings alone will not resolve the question of class certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). As a corollary, courts have found it premature for a defendant to challenge class certification through an opposition to a motion for leave to amend. *See, e.g., Walintukan v. SBE Entm't Grp., LLC*, Case No. 16-cv-01311-JST, 2017 WL 635278, at *3 (N.D. Cal. Feb. 15, 2017). Defendants have proffered no reason for the Court to depart from that standard course. The Court declines to do so.

For the reasons discussed above, the Court **GRANTS** Plaintiff's motion for leave to amend.

## IV. CONCLUSION

For the above reasons, The Court **GRANTS** Defendants' motion to dismiss for failure to state a claim and for lack of personal jurisdiction. Plaintiff may file an amended complaint as to his wrongful termination claims against Defendant Yarbrough.

The Court also **GRANTS** Plaintiff's motion for leave to amend the complaint. Plaintiff may file his proposed Second Amended Complaint in order to bring § 17200 claims on behalf of himself and all similarly situated YWS employees.

Plaintiff shall file his amended complaint by November 4, 2020. Plaintiff may not add new claims or parties without leave of the Court or stipulation by the Parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: October 14, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-05896-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND